Daniel J. Park, ABA #1811122
LE GROS BUCHANAN & PAUL
4025 Delridge Way SW, Suite 500
Seattle, WA 98106
Phone: (206) 623-4990
Facsimile: (206) 467-4828
Email: dpark@legros.com

*Attorneys for Plaintiff Yak Timber, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| YAK TIMBER, INC., <br><br> Plaintiff, <br><br> v. <br><br> BETHEL ENVIRONMENTAL SOLUTIONS, LLC, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT** |

Plaintiff Yak Timber, Inc. ("Plaintiff" or "Yak Timber") alleges as follows against Bethel Environmental Solutions, LLC ("Defendant" or "BES"):

## I. PARTIES

1. Plaintiff Yak Timber, Inc. is an Alaska corporation with a principal place of business in Yakutat, Alaska.

2. Defendant Bethel Environmental Solutions, LLC is an Alaska limited liability company with a principal place of business in Anchorage, Alaska.

Complaint - Page 1
Yak Timber Inc., v. Bethel Environmental Solutions, LLC
No. _____

## II. JURISDICTION AND VENUE

3. Subject matter jurisdiction is based on 28 U.S.C. §1333 and 28 U.S.C. §1331. This is an admiralty or maritime claim within the meaning of Fed. R. Civ. P. 9(h).

4. Venue is appropriate under 28 U.S.C. § 1391(b) because Defendant is a resident of this judicial district. The parties' contract also made Anchorage, Alaska the exclusive venue for any dispute relating to the subject matter of this action.

## III. FACTS

5. Yak Timber is the owner of the tug KIMBERLY C and the barge YT 250 (collectively, the "Vessels").

6. On or about August 2, 2022, Yak Timber, as Owner, and BES, as Charterer, entered into a Standard Time Charter for the charter of the KIMBERLY C and YT 250 for the purposes of transporting contaminated materials from Yakutat, Alaska to Seattle, Washington. A true and correct copy of the Standard Time Charter is attached as **Exhibit A** to the Complaint.

7. The Standard Time Charter provided a charter rate of $12,500 per day, plus fuel and lubricants at cost. The Standard Time Charter required BES "to load barge RM 250 [sic] under separate contract at Charterer's cost and risk[.]" The Standard Time Charter also provided that BES was "responsible for unloading in Seattle at Charterer's cost and risk."

8. The Standard Time Charter also included the following provisions relevant to this dispute:

> 3.1 **Hire.** Charterer must pay hire for use of the Vessels. Lump sum hire is fully earned upon completion of loading, regardless of whether the voyage becomes delayed, frustrated or cancelled for any reason, or the Vessel(s) or cargoes become lost. Daily rate hire accrues from delivery until redelivery of the Vessels, portal to portal, prorated to the next four (4) hour increment.
>
> 3.7 **Payment and Interest.** If a deposit is identified above, Charterer must pay Owner the deposit amount upon execution of this agreement, to be held as an advance against hire and to be credited to Owner's final invoice following Charterer's redelivery of the Vessels. Owner will invoice Charterer for hire and all other amounts on completion of a voyage or on a weekly or other interim basis, as Owner may agree. Charterer must make all payments in U.S. currency without deduction or setoff within ten (10) days from date of invoice. Sums due but not paid accrue interest at the rate of one percent (1%) per month.
>
> 4.2 **Exclusive Control.** Owner will man, navigate, victual, operate, repair and supply the Vessels and have exclusive control over the Vessels, subject only to Charterer's general directions as to the ports/place of call and its cargo operations. The manner and means of the performance of the transportation services will at all times be left to the judgment, discretion, direction and control of Owner and the Master of the Tug. Neither Owner nor the Master or crew are responsible for inspecting any cargoes or cargo operations, including any loading, stowage, trimming, securing or discharging of cargoes, nor will any advice, recommendations or comments from Owner, Master or crew with respect to cargo enlarge Owner's responsibilities under this agreement.
>
> 5.2 **Inspection.** Charterer is responsible for inspecting the Vessels, including their fittings, gear and equipment, prior to or at delivery to determine their suitability and fitness for the intended services, with Charterer to note any deficiencies in writing to Owner prior to first loading of cargoes. Upon Charterer's acceptance of the Vessels or upon the commencement of first loading of cargoes, whichever occurs first, it will be deemed acknowledged by Charterer that the Vessels,

including their fittings, gear and equipment, are in all respects suitable and fit for the intended services.

5.4 **Cargo Operations.** Charterer is responsible for the loading, stowage, trimming, securing, lashing, unlashing and discharging of all cargoes, with such cargo operations to be performed at its risk and expense, under its direction and control and subject to its final approval. . . .

14 **Termination**

14.1 **Owner.** Owner may terminate this agreement upon Charterer's failure to pay any hire, charge, expense or any other amount when and as due under this agreement.

14.2 **Charterer.** Charterer may terminate this agreement in the event the Vessels or either of them breaks down or is otherwise unable to perform for a continuous period of ten (10) days with Owner having failed to provide a substitute or otherwise resume performance; in such event, any daily rate hire will continue to accrue until the Vessels have returned to the agreed redelivery port/place or for such period of time routinely required for the Vessels to return to such port/place, whichever is less.

18 **Governing Law and Dispute Resolution.** This agreement is governed by the general maritime law of the United States or by the laws of the State of Alaska in the event there is no applicable general maritime rule of law. The parties submit to the exclusive venue and personal jurisdiction of the courts located in Anchorage, Alaska, with respect to any dispute arising out of or relating to this agreement, with the substantially prevailing party to recover its legal fees and costs.

20 **Integration, Construction and Modification.** This constitutes the entire agreement of the parties and supersedes all prior and contemporaneous agreements, written and oral. . . .

9. On August 31, 2022, Yak Timber delivered the Vessels for loading at the Sawmill Cove U.S. Forest Service Log Transfer Site in Yakutat, Alaska.

LE GROS BUCHANAN & PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

10. The YT 250 barge was loaded with bags of contaminated materials. 167 bags of contaminated materials remained at the Sawmill Cove U.S. Forest Service Log Transfer Site after loading.

11. On September 3, 2022, the Vessels departed Yakutat for Seattle, Washington. The Vessels arrived in Seattle on September 11, 2022.

12. On September 23, 2022, the unloading of the bags of contaminated materials began at the Waste Management facility in Seattle. The commencement of the unloading was delayed due to tribal fishing closures along the Duwamish River that prevented access to the Waste Management facility.

13. On October 7, 2022, after the contaminated materials were unloaded, the Vessels departed Seattle for Yakutat. The Vessels arrived in Yakutat on October 16, 2022.

14. On October 18, 2022, Yak Timber sent BES Invoice No. 203 in the amount of $443,912 for the charter hire and other charges for the above-referenced voyage. Invoice No. 203 consisted of 35 charter hire days at $12,500/day plus other fees. A true and correct copy of Invoice No. 203 is attached hereto as **Exhibit B**.

15. Pursuant to Paragraph 3.7 of the Standard Time Charter, BES was required to pay Invoice No. 203 no later than October 28, 2022, or ten (10) days from the date of the invoice.

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

16. On October 20, 2022, BES sent an email to Yak Timber titled "Termination of Services." BES purported to terminate the Standard Time Charter and did not authorize the loading of the remaining 167 bags of contaminated materials onto the barge YT 250. BES stated that it had retained "another party" to perform this work.

17. To date, BES has made no payment toward Invoice No. 203 and Yak Timber has received no payments for the charter hire due and owing under the Standard Time Charter.

## IV. FIRST CAUSE OF ACTION – BREACH OF CONTRACT

18. Plaintiff realleges the foregoing as if fully set forth herein.

19. BES entered into the Standard Time Charter as alleged herein and is obligated to pay Yak Timber for services rendered pursuant to the Standard Time Charter.

20. The Standard Time Charter did not provide for delivery by a certain date or identify the number of trips required to transport the contaminated materials.

21. The Standard Time Charter provided that BES was "responsible for inspecting the Vessels" and determining that the Vessels were "suitable and fit for the intended services."

22. The Standard Time Charter allowed BES to provide "general directions as to the ports/place of call" and the Vessels "cargo operations." The

Standard Time Charter also provided that "[l]ump sum hire is fully earned upon completion of loading, regardless of whether the voyage becomes delayed, frustrated or cancelled for any reason." Accordingly, BES was responsible for paying for charter hire regardless of any delays caused by fishing closures, weather, or for any other reason.

23. Yak Timber has performed all of its obligations under the terms of the Standard Time Charter. Yak Timber was ready, available, and standing by as of October 16, 2022 to transport the remaining 167 bags of contaminated materials from the Sawmill Cove U.S. Forest Service Log Transfer Site in Yakutat to the Waste Management facility in Seattle.

24. BES breached the Standard Time Charter by failing to pay Yak Timber the agreed sums, failing to pay interest on the unpaid balance, and purporting to terminate the Standard Time Charter when it had no right to do so under the terms of the agreement.

25. The Standard Time Charter provided that the courts located in Anchorage, Alaska would be the exclusive venue for any dispute arising out of or relating to the Standard Time Charter, "with the substantially prevailing party to recover its legal fees and costs." BES is therefore liable for Yak Timber's legal fees and costs arising from this action.

26. As a direct and proximate result of BES's breach of contract, Yak Timber has sustained damages of no less than the principal and interest on Invoice

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828

No. 203 and the legal fees and costs incurred in connection with this action.

27. Accordingly, BES is liable for Yak Timber's damages in an amount no less than $443,912, as well as interest, legal fees and costs, and other amounts as may be proven at trial.

## V. PRAYER FOR RELIEF

WHEREFORE, having stated its Complaint, Plaintiff Yak Timber, Inc. prays for relief as follows:

1. Damages in the amount of no less than $443,912, or such other or further amount as may be established at trial;

2. Pre-judgment and post-judgment interest;

3. Attorney's fees and costs; and

4. Such other relief as the Court deems just and equitable.

DATED this 18th day of November, 2022.

        LE GROS BUCHANAN & PAUL

        By: *s/ Daniel J. Park*
            DANIEL J. PARK, ABA #1811122
            4025 Delridge Way SW, Suite 500
            Seattle, Washington 98106
            Telephone: (206) 623-4990
            Facsimile: (206) 467-4828
            Email: dpark@legros.com

            *Attorney for Plaintiff Yak Timber Inc.*

LE GROS BUCHANAN
& PAUL
4025 DELRIDGE WAY SW, SUITE 500
SEATTLE, WASHINGTON 98106-1271
(206) 623-4990   FAX (206) 467-4828